UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLEN BOUDREAUX,<br><br>               Plaintiff,<br><br>    v.<br><br>J.B. HUNT TRANSPORTATION, INC., and DOES 1 through 25, inclusive,<br><br>               Defendants. | No. 2:14-cv-00720-KJM-KJN<br><br>ORDER |

        Defendant moves for summary judgment of plaintiff's claims arising from his employment and termination. Def.'s Mot. for Summ. J. (MSJ), ECF No. 10-1. The court held a hearing on the matter on March 27, 2015. Andrew Lee appeared for plaintiff and Alex Barfield appeared for defendant. For the following reasons, the court GRANTS defendant's motion.

I.    BACKGROUND

    A.    Procedural History

        On December 19, 2013, plaintiff Carlen Boudreaux, a California resident, filed an action in San Joaquin County Superior Court (Case No. 39-2013-00305582-CU-WT-STK) asserting claims for (1) violations of the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code § 12940(a) (disability discrimination); (2) failure to take preventative action, *id*. § 12940(k); (3) failure to engage in the interactive process, *id*. § 12940(n); (4) failure to make

1

reasonable accommodation, *id*. § 12940(m); (5) violation of the California Family Rights Act (CFRA), *id*. § 12945.2; (6) wrongful discharge in violation of public policy; and (7) negligent infliction of emotional distress. *See* Ex. A, Notice of Removal, ECF No. 1.  Plaintiff seeks economic and non-economic damages, including future and past wages, loss of benefits, punitive damages and/or exemplary damages, and attorneys' fees and costs. *Id*. at 10.  The court has jurisdiction based on diversity under 28 U.S.C. § 1441(b).

Defendant J.B. Hunt Transport, Inc.[1] (J.B. Hunt), incorporated in Georgia with its principal place of business in Arkansas, *id*. at 3, timely removed the action on March 14, 2014. *Id*.  The court held a scheduling conference on July 31, 2014 and issued its pretrial scheduling order on August 8, 2014.  ECF Nos. 7, 8.  On February 27, 2015, defendant timely filed the instant motion for summary judgment and statement of undisputed facts.  ECF Nos. 10, 11, 12. Plaintiff filed an opposition on March 13, 2015.  ECF No. 15.  Defendant replied.  ECF No. 18.

B.   Undisputed Facts

Defendant J.B. Hunt provides transportation services for the movement of general commodities throughout North America.  Statement of Undisputed Facts 2 (SUF), ECF No. 12. Plaintiff Carlen Boudreaux worked at-will as a Driver/Installer for J.B Hunt at its Stockton location in San Joaquin County, California from December 7, 2009 until May 9, 2011, when he was terminated.  SUFs 4, 5, 11, 19, 27.  Plaintiff worked for defendant's Dedicated Contract Services Division, which supplies local deliveries on behalf of Whirlpool.  SUF 8.  His duties included "driving a truck, loading and unloading large appliances, and performing installation of those appliances at delivery locations."  SUF 9.  He reported to Fleet Manager Charles Horta, who reported to Operations Manager Tony Vargas.  SUF 10.

Defendant told plaintiff he was terminated because he had incurred multiple customer complaints.  SUF 20.  On May 9, 2011, a "Safety Event Review" noted that it was plaintiff's third property damage incident in the last month and a half, and plaintiff had two

---

[1] Defendant J.B. Hunt was incorrectly identified as "J.B. Hunt Transportation, Inc." in the original complaint.  In its Notice of Removal, defendant consents to plaintiff filing an amended complaint to state the correct name (ECF No. 1 at 1 n.1); plaintiff has not yet done so.  At hearing, defendant's counsel stated the court may wait until any trial to correct the error.

builders request that he does not install at their location. ECF No. 15-2 at 4. That report lists five previous accidents/incidents, on March 2, 2010, July 9, 2010, March 30, 2011, April 1, 2011, and April 6, 2011. *Id*. at 5. Plaintiff's employment record otherwise reflects that plaintiff was on probation for three months, beginning in March 2010, for his involvement in a motor vehicle accident. SUF 13. In September 2010, he received a customer complaint. SUF 14; ECF No. 35/2 at 13. On March 21, 2011, he had another property damage incident, which was not documented until a May 9, 2011 report prepared by Horta, stating plaintiff had been terminated "due to the number of customer complaints and property damages." Ex. A, ECF No. 15-2. On April 6, 2011, plaintiff was placed on a second three month probationary period for failing "to follow proper protocol" resulting in "property damage at a customer location." SUF 16. Also in the record is a "Driver Discipline Form," dated April 19, 2011 for an incident occurring on Octej "31, 2011. ECF No. 13-2 at 10. Plaintiff received a verbal warning for failing to properly rqi "driving time. *Id*. On May 9, 2011, the day plaintiff was terminated, a customer requested plaintiff not be permitted to perform installations at the customer's property. SUF 18; Ex. B, ECF No. 15-2.

        Prior to his termination, on April 29, 2011, plaintiff told Horta as required by company policy that he had "twinged" his back while working, and had hurt his back and left shoulder. SUF 21, 24; Boudreaux Depo. at 112, ECF No. 13-1. Horta asked if he could still make the next delivery, and plaintiff said "probably." Boudreaux Depo. at 113. When plaintiff returned to the warehouse a few hours later, he had a three-way call with Horta and Human Resources and reported pain in his back and left shoulder. *Id*. at 112, 114. The next day, he reported his hand had begun to hurt and was swollen. *Id*. at 117. He continued to work on his regular work days between his injury on April 29, 2011 and termination on May 9, 2011. SUF 25. He did not seek an accommodation, leave, or have any restrictions on his ability to work between the time of his injury and his termination. SUFs 30, 31, 33. On May 9, when Horta asked plaintiff if he could drive, plaintiff responded affirmatively. Boudreaux Depo. at 117. The day after his termination, on May 10, 2011, he saw a doctor, Roland Nakata, M.D., who placed him on disability, even though plaintiff was no longer employed by defendant, through June 15,

3

2011.  Nakata Report, Ex. G, ECF No. 15-2.  As stated at hearing and confirmed by Dr. Nakata's notes, Dr. Nakata determined that plaintiff's disability for the purposes of his disability leave and worker's compensation claim ran from May 6, 2011.  *Id*.  Dr. Nakata's determination is recorded on a one-page check box form, with the "disability fotm" box checked and the dates from "5-6-11" to "6-15-11" typed in.  *Id.*  Nothing in the record explains how Dr. Nakata identified May 6 as the start date of plaintiff's disability.  The form he signed confirms plaintiff was "under [his] professional care" starting on May 10, 2011, after his termination.  *Id*.  After his doctor's visit, plaintiff filed a worker's compensation claim, and settled the claim in October 2012 for a lump sum of $40,000.  SUF 35; Ex. H, ECF No. 15-2.  He has since undergone two wrist surgeries; the dates of those surgeries are not clear from the record.  SUF 36.  On January 19, 2012, plaintiff filed a complaint against defendant for disability discrimination with the California Department of Fair Employment and Housing (DFEH) and the Equal Employment Opportunity Commission (EEOC).  Ex. E, ECF No. 15-2.[2]

II.     LEGAL STANDARD

A court must grant a motion for summary judgment in whole or in part, "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This is a "threshold inquiry" into whether a trial is necessary at all, that is, whether "any genuine factual issues . . . properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3]  The court does not make findings of fact or determine the credibility of witnesses, *id.* at 255; rather, it must draw all inferences and view all evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v.*

---

[2] Plaintiff does not allege he received a right to sue letter, or provide a copy of such a letter. Defendant has not argued that plaintiff has not satisfied any administrative exhaustion requirements.

[3] Rule 56 was amended, effective December 1, 2010; however, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56, notes of advisory comm. on 2010 amendments.

*Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "go beyond the pleadings" and "designate specific facts" in the record to show a trial is necessary to resolve genuine disputes of material fact. *Id.* The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

III.    DISCUSSION

   A.    First Claim: Disability Discrimination (FEHA)

In order to establish a prima facie case of disability discrimination under FEHA, a plaintiff must show: (1) he suffers from a disability; (2) he is otherwise qualified to do his job with or without a reasonable accommodation; and, (3) he was subjected to an adverse employment action because of his disability. *Faust v. California Portland Cement Co.,* 150 Cal. App. 4th 864, 886 (2007). On a motion for summary judgment, a plaintiff bears the burden of establishing a prima facie case of discrimination based upon physical disability, and the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action. Once the employer has done so, a plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence the employer acted with discriminatory animus, or evidence of each permitting a reasonable trier of fact to conclude the employer intentionally discriminated. To prevail on summary judgment, a defendant must show either that (1) the plaintiff could not establish one of the elements of FEHA claim, or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate the plaintiff's

5

employment. *Avila v. Cont'l Airlines, Inc.*, 165 Cal. App. 4th 1237, 1247, (2008), *as modified on denial of reh'g* (Aug. 28, 2008).

Defendant argues it is entitled to summary judgment because at the time of plaintiff's termination, plaintiff did not have a disability or any record of a disability. MSJ at 6–8. In order to qualify as a disabled individual under FEHA, a plaintiff must allege a qualifying physical disability that "is an actual or perceived physiological disorder which affects a major body system and limits the individual's ability to participate in one or more major life activities." *Rope v. Auto-Chlor Sys. of Washington, Inc.*, 220 Cal. App. 4th 635, 659 (2013). Such a qualifying disease or condition "limits a major life activity if it makes the achievement" of the activity "difficult." *Colmenares v. Braemar Country Club, Inc.*, 29 Cal. 4th 1019, 1027 (2003). The California Code of Regulations clarifies that "major life activities" include, among other things, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." Cal. Code Regs. tit. 2, § 11065. The relevant time period for assessing whether a plaintiff has a disability is the time of the challenged action, here, plaintiff's termination on May 9, 2011. *Gross v. UnumProvident Life Ins. Co.*, 319 F. Supp. 2d 1129, 1153 (C.D. Cal. 2004) ("To allow Plaintiff here to challenge Defendants' actions or inaction following [the adverse action] would amount to sanctioning a moving target, whereby the parties would be forced constantly to engage in new discovery regarding how Plaintiff is feeling today as compared to yesterday.").

On May 9, plaintiff was treating his back strain and wrist injury with baths, ibuprofen, and a wrap around his wrist. Boudreaux Depo. at 116; *see also id*. at 115 (testimony that at the time of injury, plaintiff did not believe it impaired his ability to do his job). Defendant Horta was aware of the wrap and the swelling, and when he asked plaintiff if he could drive with the wrap as required by his job duties, plaintiff responded affirmatively. *Id*. at 117. It is undisputed that plaintiff did not say he could not drive. *Id*. While plaintiff says he was terminated when he asked to see a doctor on May 6, SUF 33, ECF No. 15-1 at 8, as explained below, nothing in the record supports a reasonable factfinder's reaching this conclusion.

At his deposition, plaintiff testified that at the time his wrist injury occurred on April 29, 2011, he did not believe it impaired his ability to do his job, he thought he could still work; he said multiple times that he "worked through the pain." Boudreaux Depo. at 115, 116, 124. He testified that during his delivery immediately after the injury, his back was still hurting, but his hand and wrist were not. *Id*. at 112; SUF 21. In disputing defendant's narrative, plaintiff in his briefing says he requested medical care on May 6, 2011, prior to his termination, and that he was terminated for making this request. *See* ECF No. 15-1 at 7–8 (disputing facts 28 and 29). He supports this assertion with a single citation to the following exchange in his deposition:

> Q: And at the time you informed J.B. Hunt of your back strain, you did not provide the company with any kind of work restrictions related to your back strain that your primary care doctor issued; correct?
>
> A: Correct. I didn't have a doctor. I didn't go to a doctor until the following week. I worked through that pain for a whole week. After I reported the injury, I worked a whole week, waiting to go to occupational therapy, trust me.

Boudreaux Depo. 124:13-21, ECF No. 13-1 at 21. This citation does not establish that plaintiff sought medical care on May 6. It does support the conclusion that he worked "a whole week" without going to the doctor. A whole week of seven days from the injury date of April 29 is May 6. While plaintiff says he "didn't go to a doctor until the following week," suggesting he had a doctor's appointment at some point during the week ending on May 6, nothing else in the record supports May 6 as the date on which either plaintiff requested medical care or occupational therapy from his employer, or that he visited a doctor before May 10. While Dr. Nakata does state that plaintiff's disability began on the date of injury, May 6, 2011, nothing in the record explains the doctor's identification of that date; rather, it is undisputed plaintiff's injury occurred on April 29. As noted above, the doctor's note also confirms that plaintiff's care began at the earliest after his termination. Ex. G, ECF No. 15-2 (noting plaintiff under professional care since May 10, 2011).

District courts have found that limited pain alone, when plaintiff does not put his employer on notice of any limitation, is not sufficient to qualify as a disability. In *Burke v. Starbucks Coffee Co.*, No. 2:09-CV-01920, 2010 WL 5136166, at *4 (E.D. Cal. Dec. 10, 2010),

another FEHA case, an employee continued to work after telling her supervisor she had pain in her back and legs and could not work as quickly after a car accident. The court granted summary judgment, finding plaintiff had "not presented evidence from which it could reasonably be inferred that [defendant] knew or should have known that [plaintiff] suffered from a physical and/or mental condition that made work difficult for her." *See id*. (citing *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 347 (2008) ("Pain alone does not always constitute or establish a disability.")). Similarly, in *Leatherbury v. C & H Sugar Co.*, a district court granted summary judgment because "the fact that [plaintiff] did suffer from osteoarthritic knees, among other medical conditions, is not enough. He must also show that his disability actually interfered with his employment." 911 F. Supp. 2d 872, 880 (N.D. Cal. 2012). In *Leatherbury*, doctors cleared plaintiff for work without restrictions; "[a]lthough [plaintiff] allege[d] that the climbing and crawling required by his job was made more difficult by his osteoarthritis, he was able to complete his job successfully each day." *Id*. Here, it is undisputed plaintiff reported his injury because company policy compelled him to do so, not because he was unable to work. SUF 24. He performed his job functions for the week between his injury and termination. SUF 25. While plaintiff's injury resulted in two surgeries, disability leave, and a successful worker's compensation claim, all of these took place subsequent to his termination. A reasonable factfinder could not find that plaintiff was disabled under FEHA at the time of his termination because there is no evidence, however minimal, that plaintiff was limited in his ability to perform his job.

    Even assuming plaintiff's disability, an employee cannot be discriminated against on the basis of his disability when his disability is not known to his employer. *Avila*, 165 Cal. App. 4th at 1247. 'Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the [FEHA]." *Brundage v. Hahn*, 57 Cal. App. 4th 228, 237 (1997) (considering FEHA claims with ADA claims). Plaintiff is not a qualified individual under FEHA, nor was defendant aware of any disability, and therefore summary judgment is granted as to his disability discrimination claim. Because the court resolves this claim at the prima facie stage, it does not address any pretext arguments.

B.     Second Claim: Failure to Take Preventative Action (FEHA)

It is unlawful for an employer to "fail to take all reasonable steps necessary to prevent discrimination . . . from occurring." Cal. Gov't Code § 12940(k). To maintain his claim for violation of section 12940(k), plaintiff must establish that he was subjected to discrimination on the basis of a disability. *Rossitto v. Safeway, Inc.*, No. 12-CV-05857, 2014 WL 1047729, at *7 (N.D. Cal. Mar. 17, 2014). Because summary judgment is granted as to plaintiff's discrimination claim, summary judgment is granted as to this derivative claim. *Lee v. Eden Med. Ctr.*, 690 F. Supp. 2d 1011, 1025 (N.D. Cal. 2010) ("[B]ecause Plaintiff has not supported her FEHA claims of discrimination or harassment, her claim of Defendant's failure to prevent discrimination and harassment fails as well.").

C.     Third Claim: Failure to Engage in the Interactive Process (FEHA)

California Government Code § 12940(n) makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee." "This interactive process is triggered upon notification of the disability and the desire for accommodation." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000). An employer who fails to engage in such an interactive process in good faith may incur liability "if a reasonable accommodation would have been possible." *Id.* at 1116. "Unless a disability is obvious, it is the employee's burden to initiate the interactive process." *Kao v. Univ. of San Francisco*, 229 Cal. App. 4th 437, 450 (2014).

An employer's obligation to engage in an interactive process is triggered when the employee gives the employer notice of the disability and a desire for a reasonable accommodation. *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 261 (2000). It is undisputed plaintiff did not ask for an accommodation. SUF 33. It is undisputed plaintiff's supervisor, Horta, called plaintiff the day after his injury to inquire about his status, and plaintiff told him he was able to continue working; plaintiff then continued to work the until his termination without incident. SUFs 28, 29. It is also undisputed that Horta asked plaintiff whether he could still drive

when he returned to work on Monday, May 2, 2011. Opp'n at 2–3. Plaintiff does not raise a triable issue regarding whether defendant failed to engage in an interactive process because liability is incurred "only where the employer bears responsibility for the breakdown." *Barnett*, 228 F.3d at 1115. Summary judgment is granted as to this claim.

### D. Fourth Claim: Failure to Make Reasonable Accommodation (FEHA)

Defendant argues it is entitled to summary judgment because plaintiff never sought leave and therefore cannot state a claim for the denial of leave, the basis of his reasonable accommodation claim. MSJ at 16. It is in fact undisputed that plaintiff never sought leave or requested an accommodation. SUF 33; Opp'n at 4. Accordingly, he has not raised a triable issue as to whether defendant failed to accommodate him. *See Rossitto*, 2014 WL 1047729, at *8. Summary judgment is granted as to this claim as well.

### E. Fifth Claim: Violation of CFRA

The elements of a claim under California Government Code section 12945.2(l) are: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised his right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as termination, fine, or suspension, because of his exercise of his right to CFRA leave. Here, it is undisputed plaintiff never sought or took CFRA leave, SUF 33, ECF No. 15-1, and therefore he does not satisfy the third element of his CFRA claim. Summary judgment is granted as to this claim.

### F. Sixth Claim: Wrongful Discharge in Violation of Public Policy

Plaintiff's claim for wrongful discharge is derivative of, and thus stands or falls with his disability discrimination claim. *See Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (citing *Jennings v. Marralle*, 8 Cal. 4th 121, 135–36 (1994)). Because the court grants summary judgment on the discrimination claim, summary judgment is granted correspondingly on the public policy claim.

### G. Seventh Claim: Negligent Infliction of Emotional Distress (NIED)

Plaintiff agrees his claim for negligent infliction of emotional distress is premised on and derivative of his claim for disability discrimination based on wrongful termination. Opp'n

at 16. Because the court grants summary judgment of plaintiff's discrimination claim, it grants summary judgment of this derivative claim as well.

V. <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS defendant's motion for summary judgment in full (ECF No. 10). The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

DATED: August 7, 2015.

_____
UNITED STATES DISTRICT JUDGE